## NORTH TEXAS GAS CO. v. LONE STAR GAS CO. (No. 8772.) *

(Court of Civil Appeals of Texas. Dallas. Feb. 25, 1922. Rehearing Denied April 1, 1922.)

1. **Injunction ⊜⟫149—Where defendant was required to furnish gas under a contract it sought to forfeit, the court could order payment without prejudice to parties' claims.**

Where plaintiff procured a temporary injunction against defendant's declaring forfeited for plaintiff's breach a contract to furnish gas, and a bond was given and money to pay for the gas required to be deposited in a bank, upon a showing of need of capital by the defendant, the court could properly order the money deposited paid to the defendant without prejudice to the rights or claims of either party.

2. **Injunction ⊜⟫149—Order for payment to gas company of money deposited in court proper so as not to inconvenience the public pending litigation.**

Where plaintiff, furnishing gas to the public, obtained a temporary injunction against defendant's declaring the contract to furnish gas forfeited and compelling the defendant to furnish gas, defendant might have an order for payment to it of money deposited in a bank to pay for the gas upon showing of want of capital, for defendant's remedy was not limited to obtaining a dissolution of the injunction, particularly since that would inconvenience the public, which courts will not do, pending litigation.

3. **Injunction ⊜⟫149—Ordering money paid for gas furnished by defendant pending injunction held not abuse of court's discretion.**

Where plaintiff seeks specific performance of a contract to furnish gas, and defendant seeks its cancellation, and a temporary injunction required defendant to continue furnishing gas, and an order required defendant to pay money therefor into a bank, a subsequent order that the bank pay the same to defendant, and that such should not be construed to effect the claims of the parties, *held* to preserve the parties' rights and to be a proper exercise of discretion.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by the North Texas Gas Company against the Lone Star Gas Company to enjoin the defendant from declaring forfeiture of a contract to furnish gas, in which an injunction was granted and a bond given, which proved inadequate, and the court on application increased the bond and ordered the plaintiff to pay money for gas being used into a bank, and from an order that the bank pay such money to the defendant without prejudice to defendant's claims, the plaintiff appeals. Affirmed.

Charles L. Harty, of Dallas, for appellant.
Lawther & Pope and Karl F. Griffith, all of Dallas, for appellee.

HAMILTON, J. On June 23, 1921, appellee gave appellant written notice of its renunciation of certain contracts then existing between them. These contracts contained clauses providing for forfeiture and termination at the instance of either party upon breach by the other. The notice and written declaration of forfeiture specified various alleged violations of the contracts out of which arose the right to forfeit under the express provisions of the contracts defining the mutual relations, rights, and obligations of the respective parties.

Following receipt of the declaration of forfeiture appellant, on June 29, 1921, filed suit against appellee in which judgment for specific performance is sought. And, ancillary to the proceeding so instituted for this relief against appellee, appellant also prayed for a preliminary injunction against appellee to prevent discontinuance or diminution of the delivery of gas from its pipe line system into appellant's distributory system.

The injunction was granted in response to the prayer therefor, and appellant's bond was fixed at $10,000.

In September, 1921, appellee filed a motion in which the amount of the bond thus fixed was complained of as being inadequate, and the court was requested to increase it and fix its amount at $500,000. Appellant objected to and resisted the motion to increase the amount of the bond, as requested by appellee, and, it seems, suggested that tenders of payments for gas it had made from time to time after the injunction was granted, and which had been declined by appellee, be paid into a depositary to be designated by the court. Anyhow, the result of the court's consideration of the motion was that the amount of the bond was increased to $40,000, and appellant was ordered to pay into the National Bank of Commerce of Dallas, Tex., all the money it claimed to be due appellee under the terms of the contracts specific performance of which was demanded in the suit, and it was also ordered to deposit in this designated depositary once a month thereafter all the money it claimed had accrued to appellee during the preceding month, this to continue so long as the injunction requiring appellee to supply gas should remain in force. The decree further recited that all money so paid into the depositary should be subject to the orders of the court.

In compliance with this decree appellant paid into the bank all money it computed then to be due, and thereafter complied with the order by making the monthly payments accruing as under the contract for gas supplied by appellee in conformity with the injunction order.

On December 3, 1921, appellee filed its amended answer to appellant's petition, and therein made application for an order direct-

---

⊜⟫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error refused May 17, 1922.

ing the bank to pay to appellee immediately all money deposited by appellant under the former order entered September 27, 1921, and requiring appellant to pay to appellee all the money appellant claimed would be due from time to time under the contract, were it still in force, and also requiring appellant to accompany such payments by statements specifying the particular accounts on which the payments were made; such statements to be subject to audit by appellee. The application prayed that the order should provide that the acts for which it called were to be performed without prejudice to the contentions of either party as to the suit for specific performance.

On December 27, 1921, in response to appellee's application above described, the court entered a decree ordering:

"That the National Bank of Commerce of Dallas, Tex., the depositary heretofore designated by this court, pay over to said Lone Star Gas Company the sum of $272,315.51 now in its hands in pursuance of order of this court heretofore made, receipt for said money to be given by said Lone Star Gas Company to said National Bank of Commerce and to said North Texas Gas Company as on account. It is further ordered, adjudged, and decreed that the said North Texas Gas Company, as long as the injunction heretofore issued by this court is in force, and as long as under the mandate of said injunction the said Lone Star Gas Company continues to deliver to said North Texas Gas Company natural gas, that said North Texas Gas Company shall pay to said Lone Star Gas Company all and every the sums of moneys which said North Texas Gas Company claims would be due the said Lone Star Gas Company under the contracts sued upon herein, were the same still in force and effect, said payments to be accompanied by statements from said North Texas Gas Company specifying the particulars on account of which said moneys are paid, which said statements shall be subject to audit by said Lone Star Gas Company. It is further ordered, adjudged, and decreed that said payments herein ordered and directed shall be without prejudice to the contention of said North Texas Gas Company that said contracts have not been terminated and are still in force and effect, and without prejudice to the contention of the said Lone Star Gas Company that said contracts had been terminated and are not in force and effect, and said payments to be received by said Lone Star Gas Company as on account."

From this last order the appeal is prosecuted.

[1] Complaint against it is embodied in numerous propositions based upon related assignments of error, but the heart of them all seems to be the ultimate theory that, since appellee has elected to declare a forfeiture, it must abide by this choice of remedies and accept nothing pending the litigation, or, taking pay, it must in so doing abandon its right to claim a forfeiture and take the pay under the contract, thereby recognizing and acting under the contract and sacrificing its right further to claim and pursue the remedy it has chosen. Appellant zealously contends that it possesses a valuable legal right to invoke and enforce against appellee such alternative, and that the order appealed from destroys this right and assists appellee, after its declaration of forfeiture has bound it to its election, to evade the legal consequences of obtaining the benefits of the contract while seeking a decree of annulment by reason of forfeiture.

Of course, appellee cannot repudiate the contract and at the same time voluntarily keep on performing it. The doing of the latter is an abrogation of all right to the former. Neither can appellee, while declaring that the contract no longer binds it and while seeking to establish forfeiture, accept a tender of performance on appellant's part without thereby terminating its claim of any right to forfeiture. These long-established elementary principles are to be recognized and applied in every proper case, but they do not govern or have any application to the case presented.

Appellee's situation is not one wherein it seeks to pursue inconsistent remedies, or voluntarily takes under the contract while it denies the existence of the contract and calls for a decree of forfeiture. It has been persistently and consistently declaring the contract at an end and the right of appellant to take gas under it forfeited by its own provisions applied to appellant's alleged conduct. At the instance of appellant it has been prevented from consummating its declaration of forfeiture, and by the mandate of the court's preliminary injunction, without regard to the merits of its assertion of rights, and without regard to the merits of appellant's assertion of rights upon the main issue, it has been compelled, and is now compelled, to continue to supply its gas to appellant continuously until the principal controversy can be settled by final judicial ascertainment. In substance and effect the court, at appellant's instance, forced appellee, on its part, to keep on performing the contract. Specific performance for the time is thus being required of appellee by an interlocutory order without any adjudication of the merits just as effectually as if the case had been adjudicated. It appears from the record that gas of a vast value was being supplied to appellant under the compulsion of the preliminary injunction without an adequate bond, when the order, acquiesced in, if not suggested, by appellant, was made requiring payment into a designated depositary, there to remain subject to the orders of the court.

Appellee then filed its motion for an order requiring payment to it of money already deposited by appellant and money to be deposited by it in conformity with its own claim of what it owed appellee, without prejudice

to any asserted right of either party. This motion alleged facts which, if true, revealed urgent and necessitous reasons why delivery of gas under the court's order could not be continued without any compensation. We cannot say that the evidence received by the court entirely failed to support the motion, as appellant contends it did fail to support it. In such circumstances we think there is disclosed no clear abuse of the broad discretion possessed by the trial court in all such matters. Appellee's attitude is not that of accepting the funds of its own volition. It is that of being compelled to ask the court for such funds in order that it may do that which the fiat of the court forces it to do against its choice, without regard to any right either it or its adversary may have and establish whenever the court arrives at a consideration of such rights.

If a final judgment establishes that the contract continues to bind appellee, then appellee, under the order complained against, is receiving precisely what it is entitled to receive and what appellant insists it ought to have. Hence no injury is done appellant. If, on the other hand, a final judgment sustains the claim of forfeiture, appellant will have been receiving a supply of gas from appellee wrongfully during the pendency of the suit and which appellee could supply (according to the showing upon which the order was based) only with the most severe hardships, if at all, except upon reimbursement.

In the situation appellee presented to the court with reference to the need of capital with which to perform the service required by the injunction, why should the court decline to permit it to receive the money paid and to be paid into the depositary by appellant without abandoning its asserted right of forfeiture? Appellant asserts that the court, by expressly ordering the money paid to appellee without prejudice to the rights of either party, gravely prejudiced its rights, because the order cut it off from estopping appellee to claim forfeiture after taking the money.

This contention fails to take any account of the respective positions of the parties, consideration of which evidently moved the court to make the order. Appellee was from the incipiency of the controversy trying to do one thing, and that alone. It was endeavoring to pursue the only remedy it ever asserted. The court brought into action its equity power against carrying into effect this remedy and forced appellee to abandon the pursuit of its asserted right until the merits of the case might be determined. Appellee was thus, as stated, compelled to continue performance. This involved the continuous surrender by it of property of very great value immediately to be destroyed in the process of consumption by the ultimate users. It was denying that it was under any contractual obligation to do this. Appellant,

on the other hand, was asserting this very obligation. This issue could not be determined until it could pass through the deliberate processes of final adjudication. The court, in the meantime, ordered the payment of moneys to appellee not to concede any right or primarily to confer any advantage, but rather to relieve what was claimed to be an oppressive hardship imposed by the first order of the court, and the removal of which seemed essential to proper compliance with the order. Under such circumstances ought it to be said that it was either expedient or equitable for the court to refuse to appellee the use of the money in its control admitted by appellant to be due unless appellee should first put itself in such position that by accepting the money it abandoned and sacrificed every asserted · right, which was to be passed upon at the final trial?

[2] Appellant advances the proposition that, if the injunction works a hardship upon appellee, yet that is but an incident which often attends, litigation which cannot be relieved against, and also suggests that appellee's remedy is to obtain a dissolution of the injunction, which it has never sought to do. The elements evidently considered by the court in granting the order would render certain · that it would not· dissolve the injunction so long·as the actions restrained by it continue to be threatened as they are by appellee's insistence upon forfeiture. To dissolve the injunction would be to clear the way, so far as appellant is concerned, for appellee immediately to put into effect the purpose it seeks to attain upon final determination of the case. In this connection it must be borne in mind that, in the nature of things, the court is under a duty to do more than preserve the respective positions of these two litigants while they wage their controversy. If we could take notice of it by no other means, the record in this case informs us that these litigants are monopolies through whom the public in certain communities are supplied with a commodity upon which both the health and comfort of numerous people doubtless depend. These people, whether or not they are now before the court soliciting its protection, cannot be left to the mercy of such litigants, with reference to whom they are so situated. The court, in the exercise of its broad discretion, considering every reasonable contingency, may and should impose upon both whatever fair provisions, directions, and limitations the protection of the public seems to require pending the suit. Wherever the right between these parties may lie the public, who are the ultimate consumers, are innocent, and courts may see to it that they are not victimized pending the litigation. For these reasons, if for no other, a motion to dissolve would have been idle, and this must have been recognized by the parties here.

[3] Appellant presents the proposition that,

if the appellee is right in its position and the final judgment of the court grants the relief it prays, then in such event ·the contract is already terminated, and accordingly appellee is entitled to receive for its gas only quantum meruit payment, which is claimed to be less than that provided for in the contract. We see no abuse of discretion in this respect. There is nothing in the record to which our attention is called which indicates that there is a lower market price for gas than that the contract fixes, and there is no positive proof that the price is either reasonable or unreasonable. Such being the case, and the contract specifying the price paid and tendered by appellant, the court might presume it to be reasonable. Such contracts, made in good faith, do not ordinarily fix unreasonable prices. However, we are not to be understood as holding that the court could not enter the order without this matter first being determined, under the peculiar situation presented. We rather think that all such questions are properly deferred to the final hearing upon the main issues.

Furthermore, the thought recurs that appellant, in effect, asks the court, pendente lite, to make provision by which,. if its alleged wrong out of which appellee's claim of right under the contract arises, is established and declared by the judgment, it may more readily take advantage of and profit by such wrong. For, if appellant has committed no breach, there is no forfeiture, and the contract binds both parties, so that the correctness of payments measured by it is determined; if appellant has breached the contract and thereby given appellee a lawful right to terminate it, why should the court in a preliminary proceeding impose the burden upon appellee of proving to what extent the court equitably ought to supply it funds paid to a depositary under the facts and circumstances recited?

Broadly considered, it seems to us that the order of the court of which complaint is made, taken in connection with the other preliminary orders, is but a restoring and preserving of the status and relations which existed before the controversy arose. The rights of the parties were then measured by the terms of the contract. One now seeks specific performance. The other seeks cancellation. The public welfare is involved. The ultimate effect of the court's entire action is to say to both parties:

"You shall mutually continue to do all the contract, independent of the forfeiture clause, requires of you without prejudice to the claim of either. I will hold you where you were under your own contract before your conflicting contentions arose until I can adjudicate these contentions."

This was a proper exercise of power and discretion. In our opinion no abuse of discretion is disclosed, and therefore the decree is affirmed.

Affirmed.

---

⊛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

